## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**JAMIE MILLS and MARISSA SCHRYER,**
**Individually and on behalf of all others**
**similarly situated,**

**Case No. _____**

**Plaintiffs,**

**JURY TRIAL DEMANDED**

**v.**

**COLLECTIVE ACTION**
**PURSUANT TO 29 U.S.C. § 216(B)**

**QUESTX, LLC,**

**CLASS ACTION**
**PURSUANT TO FED.  R. CIV. P. 23**

**Defendant.**

## ORIGINAL COLLECTIVE/CLASS ACTION COMPLAINT

Plaintiffs Jamie Mills ("Mills") and Marissa Schryer ("Schryer") bring this action individually and on behalf of all current and former hourly call-center employees[1] (hereinafter "Plaintiffs and the Putative Class Members") who worked for QuestX, LLC ("QuestX" or "Defendant"), anywhere in the United States, at any time during the relevant statutes of limitations through the final disposition of this matter, to recover compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 206, 207 and 216(b) of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the Nevada Wage Act ("NWA"), NEV. REV. STAT. §608.005, *et seq.*, the Michigan Workforce Opportunity Wage Act, MICH. COMP. LAWS ANN. § 408.411, *et seq.* ("WOWA"), and the Michigan Payment of Wages Act,  MICH. COMP. LAWS ANN. § 408.471, *et seq.* ("MPWA") (WOWA and the MPWA will be referred to collectively as the "Michigan Acts").

Plaintiffs' FLSA claims are asserted as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), while their respective state law claims are asserted as class actions under Federal Rule

---

[1] "Hourly call-center employee" is defined as any hourly employee of QuestX, who worked either from home or in a call center, and whose primary job duty included making or answering phone calls to QuestX's clients or its clients' customers.

of Civil Procedure 23. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## I.
## OVERVIEW

1.      This is a collective action to recover overtime wages and liquidated damages brought pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201–19, and class actions pursuant to the state laws of Michigan and Nevada, and FED. R. CIV. P. 23, to recover unpaid wages and other applicable penalties.

2.      Plaintiffs and the Putative Class Members are those similarly situated persons who worked for QuestX, anywhere in the United States, at any time from December 16, 2018 through the final disposition of this matter, and have not been paid for all hours worked nor the correct amount of overtime in violation of state and federal law.

3.      Specifically, QuestX enforced a uniform company-wide policy wherein it improperly required its hourly call-center employees—Plaintiffs and the Putative Class Members—to perform work "off-the-clock" and without pay.

4.      QuestX's illegal company-wide policy has caused Plaintiffs and the Putative Class Members to have hours worked that were not compensated and further created a miscalculation of their regular rate(s) of pay for purposes of calculating their overtime compensation each workweek.

5.      Although Plaintiffs and the Putative Class Members have routinely worked in excess of forty (40) hours per workweek, Plaintiffs and the Putative Class Members have not been paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

6.      QuestX knowingly and deliberately failed to compensate Plaintiffs and the Putative Class Members for all hours worked each workweek and the proper amount of overtime on a routine and regular basis during the relevant time period.

7.      Plaintiffs and the Putative Class Members did not (and currently do not) perform work that meets the definition of exempt work under the FLSA or relevant state law.

8.      Plaintiffs and the Putative Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid wages and other damages owed under Nevada and Michigan state law as class actions pursuant to Federal Rule of Civil Procedure 23.

9.      Plaintiffs pray that all similarly situated workers (Putative Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

10.     Plaintiffs also pray that each Rule 23 class is certified as defined herein, that Plaintiff Mills be named as the Class Representative of the Michigan Class, and that Plaintiff Schryer be named as the Class Representative of the Nevada Class.

## II.
## THE PARTIES

11.     Plaintiff Jamie Mills ("Mills") was employed by QuestX in St. Johns, Michigan during the relevant time period. Plaintiff Mills did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[2]

12.     Plaintiff Marissa Schryer ("Schryer") was employed by QuestX in Las Vegas, Nevada during the relevant time period. Plaintiff Schryer did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[3]

---

[2]  The written consent of Jamie Mills is hereby attached as Exhibit "A."

[3] The written consent of Marissa Schryer is hereby attached as Exhibit "B."

13.     The FLSA Collective Members are those current and former hourly call-center employees who were employed by QuestX, anywhere in the United States, at any time from December 17, 2018 through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiffs worked and was paid.

14.     The Michigan Members are those current and former hourly call-center employees who were employed by QuestX, in Michigan, at any time from December 17, 2018 through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Mills worked and was paid.

15.     The Nevada Members are those current and former hourly call-center employees who were employed by QuestX, in Nevada, at any time from December 17, 2019 through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Schryer worked and was paid.

16.     Defendant QuestX, LLC is a foreign limited liability company, licensed to and doing business in the State of Michigan, and can be served through its registered agent: **The Corporation Company, 40600 Ann Arbor Road E., Ste 201, Plymouth, Michigan 48170.**

### III.
### JURISDICTION & VENUE

17.     This Court has federal question jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201 *et. seq.*

18.     This Court has supplemental jurisdiction over the additional state law claims pursuant to 28 U.S.C. § 1367.

19.     This Court has personal jurisdiction over QuestX because the cause of action arose within this District as a result of QuestX's conduct within this District and Division.

20.     Venue is proper in the Western District of Michigan because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

21. Specifically, QuestX's corporate headquarters are located in St. Johns, Michigan, and Plaintiff Mills worked for QuestX in St. Johns, Michigan, all of which is located within this District and Division.

22. Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391.

## IV.
## ADDITIONAL FACTS

23. QuestX is a customer engagement and contact center that provides customer services to their business clients.[4]

24. Plaintiffs and the Putative Class Members' job duties consisted of answering phone calls made by QuestX's customers, answering customer inquiries, troubleshooting issues on behalf of customers, and generally assisting customers.

25. Plaintiff Mills was employed by QuestX in its call center located in St. Johns, Michigan from approximately April 2019 until April 2020.

26. Plaintiff Schryer was employed by QuestX in its call center located in Las Vegas, Nevada from approximately November 2018 until July 2021.

27. Plaintiffs and the Putative Class Members are non-exempt call-center employees who were (and are) paid by the hour.

28. Plaintiffs and the Putative Class Members typically worked approximately forty (40) "on-the-clock" hours per week.

29. In addition to their forty (40) "on-the-clock" hours, Plaintiffs and the Putative Class Members worked up to six (6) hours "off-the-clock" per week and have not been compensated for that time.

---

[4] https://questx.tech/call-centers/.

*Unpaid Start-Up Time*

30.     Plaintiffs and the Putative Class Members have not been compensated for all the hours they worked for QuestX as a result of QuestX's corporate policy and practice of requiring their hourly call-center employees to clock-in only when ready to take their first call at the start of their shift.

31.     Specifically, Plaintiffs and the Putative Class Members are required to start and log-in to their computer, read company emails, open multiple different computer programs, log in to each program, and ensure that each program is running correctly—all of which can take up to twenty minutes—before they are allowed to clock in on the time keeping software application and then take their first phone call.

32.     If Plaintiffs and the Putative Class Members are not ready and on the phone at shift start, they can be (and often are) subject to discipline.

33.     If Plaintiffs and the Putative Class Members clock in prior to their shift start time, they are also subject to discipline.

34.     Therefore, the only way to be ready on time, and avoid discipline, is to prepare the computer "off-the-clock" and without pay.

35.     During this start up time, Plaintiffs and the Putative Class Members were not compensated although they were expected to have completed this process in advance of their official start times.

*Unpaid Work During Meal Period Breaks*

36.     QuestX provides Plaintiffs and the Putative Class Members with one unpaid thirty-minute meal break each day.

37.     However, QuestX requires Plaintiffs and the Putative Class Members to perform "off-the-clock" work during their unpaid meal break.

38.     Plaintiffs and the Putative Class are required to stay on the clock and on call until the minute their meal break begins, they then must clock out, then perform a lengthy shut down process, then log out of the phone system or otherwise go into an aux mode, and then log off of their computer prior to leaving their desk for their meal break.

39.     Plaintiffs and the Putative Class Members are required to log back into their computer, perform a restart process, log back into the phone system, then clock in, and be back on the phone before their meal break end.

40.     The log off process used prior to taking a meal break can take anywhere from one to three minutes.

41.     The log in process used after returning from a meal break can take anywhere from another one to three minutes.

42.     This lengthy log off and log in procedure had to be performed during Plaintiffs and the Putative Class Members' meal break per QuestX's policy.

43.     Further, during busy periods, QuestX required Plaintiffs and the Putative Class Members to work through their meal break periods but QuestX did not pay them for working through their entire meal break period.

44.     Specifically, QuestX deducted thirty minutes of wages and entered in a false meal break period into the timekeeping system to make it appear as though Plaintiffs and the Putative Class Members received a break when they were forced to work through it by QuestX.

### *Unpaid Technical Downtime*

45.     Plaintiffs and the Putative Class Members' computers crashed multiple times each week and required Plaintiffs and the Putative Class Members to reset them, which took ten (10) minutes or more each time.

46.     At times, Plaintiffs and the Putative Class Members would spend anywhere from ten minutes (10) to several hours in a day troubleshooting their computer or talking to technical support trying to get their computer to work so they could work.

47.     Due the Covid-19 pandemic, a substantial amount of QuestX's workforce has been working remotely from home and have experienced substantial periods of technical downtime.

48.     QuestX requires Plaintiffs and the Putative Class Members to actively troubleshoot their issues, but QuestX does not pay Plaintiffs and the Putative Class Members for any of their time spent rebooting or troubleshooting.

### Unpaid Travel Time

49.     During the Covid-19 pandemic, Plaintiffs and the Putative Class Members were permitted to work from home.

50.     However, if Plaintiffs or the Putative Class Member encountered technical problems while working from home that they were unable to fix they were required by QuestX to travel to their call center to complete their shift.

51.     Even though Plaintiffs and the Putative Class Members' workday had already started from home, QuestX would not pay them for the work done from home or for the time spent traveling from home to the worksite.

52.     Instead, Plaintiffs and the Putative Class Members' pay would only start at the time they clocked in at the call center.

### Unpaid Post-Shift Calls

53.     Plaintiffs and the Putative Class Members were (and still are) not permitted to hang up on customers and must finish every call regardless of how long it takes.

54.     Plaintiffs and the Putative Class Members frequently found (and continue to find) themselves handling calls past the end of their shift time on the last day of the week.

55.     These calls would cause Plaintiffs and the Putative Class Members to go over their scheduled forty (40) hour work shift every week.

56.     However, QuestX would shave that time off and not pay Plaintiffs and the Putative Class Members any overtime for their post-shift calls.

### Unpaid FNOL Reports

57.     Plaintiffs and the Putative Class Members who worked as First Notice of Loss Representatives ("FNOLR") are required, as part of their primary job duties, to complete insurance claims reports for customers.

58.     FNOLRs generally have to complete one insurance claim report per customer.

59.     These insurance claim reports often take fifteen to thirty minutes per report to complete.

60.     The insurance claim reports must be completed in the week they were received.

61.     If they are not completed within that week, FNOLRs can be subject to discipline.

62.     FNOLRs are not permitted time to complete these reports outside of the call with the customer and the preceding two minutes after the call ("After Call Time").

63.     At the end of the two minutes After Call Time, FNOLRs must take the next phone call and begin the next insurance claim regardless of whether they had completed the prior insurance claim report.

64.     Due to QuestX's unstable computer operating systems, FNOLRs frequently lost insurance claim reports they had been working on because their computer would crash while they were filling out a report.

65.     If and when a computer crashes, all of the data placed by a FNOLR onto the insurance claim report is lost and must be completely redone.

66.      Even though QuestX has been made aware of these frequent crashes and the need to redo lost work, QuestX does not permit FNOLRs any additional time from their normal calls to complete the work.

67.      Critically, QuestX will still discipline FNOLRs who fail to complete this work on a weekly basis.

68.      Because FNOLRs know they are required by QuestX to complete their work but are not permitted time to complete it during their normal work schedule, FNOLRs must instead complete this work off-the-clock either before or after their scheduled shift.

69.      Indeed, QuestX encourages FNOLRs to complete this work off-the-clock as managers frequently tell FNOLRs that if the work is not done in a timely manner, they may be fired but because they must be on the phone during their shift, they should just complete it later off-the-clock.

70.      Specifically, Plaintiff Schryer attempted to complete an insurance claim report after it was lost due to a computer crash on the clock.

71.      Because Plaintiff Schryer was in After Call Time for more than two minutes, and not taking calls, her manager came to check on her.

72.      When Plaintiff Schryer informed her manager that she had to redo a lost report, her manager told her she could not do that on the clock but must instead complete it either during her unpaid meal break or after her shift while off-the-clock.

73.      Plaintiff Schryer's manager instructed her that any insurance claim forms that are not completed during the customer call, or within the two minutes After Call Time, must instead be finished off-the-clock at a later time/date.

74.     Similarly, Plaintiff Mills was also required at times to complete insurance claim reports off-the-clock in order to not be disciplined for not completing them within the time required by QuestX.

75.     As a result of QuestX's corporate policy and practice of requiring Plaintiffs and the Putative Class Members to perform their computer start up tasks before the beginning of their shifts, perform log-in log out processes during their unpaid meal period breaks, to work through the entire meal break without pay, to complete reports while off-the-clock, to complete post shift calls while off-the-clock, and not paying Plaintiffs and the Putative Class Members for work done from home or for time spent traveling after the start of their workday, Plaintiffs and the Putative Class Members were not compensated for all hours worked, including all worked in excess of forty (40) in a workweek at the rates required by the FLSA.

76.     QuestX has employed other individuals who perform(ed) the same or similar job duties under the same pay provisions as Plaintiffs.

77.     QuestX is aware of its obligation to pay overtime for all hours worked and the proper amount of overtime for all hours worked in excess of forty (40) each week, but failed to do so.

78.     Because QuestX did not pay Plaintiffs and the Putative Class Members for all hours worked and time and a half for all hours worked in excess of forty (40) in a workweek, QuestX's pay policies and practices violate the FLSA.

79.     Because QuestX did not pay Plaintiffs and the Putative Class Members for all hours worked, QuestX pay policies and practices also violate Nevada and Michigan state law.

## V.
## CAUSES OF ACTION

### COUNT ONE
**(Collective Action Alleging FLSA Violations)**

**A.     FLSA COVERAGE**

80.     Plaintiffs incorporate by reference all paragraphs and allegations set forth in the statement of facts of this complaint as though fully and completely set forth herein.

81.     The FLSA Collective is defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY QUESTX, LLC, ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM DECEMBER 17, 2018 THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("FLSA Collective" or "FLSA Collective Members")**

82.     At all times hereinafter mentioned, QuestX has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

83.     At all times hereinafter mentioned, QuestX has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

84.     At all times hereinafter mentioned, QuestX has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

85.     During the respective periods of Plaintiffs and the FLSA Collective Members' employment by QuestX, these individuals have provided services for QuestX that involved interstate commerce for purposes of the FLSA.

86.     In performing the operations described hereinabove, Plaintiffs and the FLSA Collective Members have been engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

87.     Specifically, Plaintiffs and the FLSA Collective Members are non-exempt hourly call-center employees of QuestX who assisted QuestX's customers who live throughout the United States. 29 U.S.C. § 203(j).

88.     At all times hereinafter mentioned, Plaintiffs and the FLSA Collective Members have been individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

89.     The proposed class of similarly situated employees, i.e. putative class members, sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 81.

90.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of QuestX.

**B.      FAILURE TO PAY WAGES AND OVERTIME UNDER THE FLSA**

91.     QuestX has violated provisions of Sections 6, 7 and 15 of the FLSA, 29 U.S.C. §§ 206–7, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all of the hours they worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

92.     Moreover, QuestX knowingly, willfully, and with reckless disregard carried out its illegal pattern of failing to pay Plaintiffs and other similarly situated employees the proper amount of overtime compensation for all hours worked. 29 U.S.C. § 255(a).

93.     QuestX is a sophisticated party and employer, and therefore knew (or should have known) their pay policies were in violation of the FLSA.

94.     Plaintiffs and the FLSA Collective Members, on the other hand, are (and were) unsophisticated employees who trusted QuestX to pay them according to the law.

95.     The decisions and practices by QuestX to not pay for all hours worked, the proper amount of overtime for all hours worked in excess of forty (40) hours in a workweek was neither reasonable nor in good faith.

96.     Accordingly, Plaintiffs and the FLSA Collective Members are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## C.     COLLECTIVE ACTION ALLEGATIONS

97.     All previous paragraphs are incorporated as though fully set forth herein.

98.     Pursuant to 29 U.S.C. § 216(b), this is a collective action filed on behalf of all of QuestX's employees who have been similarly situated to Plaintiffs with regard to the work they performed and the manner in which they have not been paid.

99.     Other similarly situated employees of QuestX have been victimized by QuestX's patterns, practices, and policies, which are in willful violation of the FLSA.

100.    The FLSA Collective Members are defined in Paragraph 81.

101.    QuestX's failure to pay Plaintiffs and the FLSA Collective Members for all overtime hours worked and overtime compensation at the rates required by the FLSA, results from generally

applicable policies and practices of QuestX, and does not depend on the personal circumstances of Plaintiffs or the FLSA Collective Members.

102.    Thus, Plaintiffs' experiences are typical of the experiences of the FLSA Collective Members.

103.    The specific job titles or precise job requirements of the various FLSA Collective Members do not prevent collective treatment.

104.    All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be paid the proper overtime rate for all hours worked in excess of forty (40) hours per workweek.

105.    Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

106.    Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and QuestX will retain the proceeds of its rampant violations.

107.    Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

108.    Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 81 and notice should be promptly sent.

## COUNT TWO
### (Class Action Alleging Violations of the Michigan Acts)

A.    **MICHIGAN ACTS COVERAGE**

109.    Plaintiffs incorporate by reference all paragraphs and allegations set forth in the statement of facts of this complaint as though fully and completely set forth herein.

110.    The Michigan Class is defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY QUESTX, LLC, ANYWHERE IN THE STATE OF MICHIGAN, AT ANY TIME FROM DECEMBER 17, 2018 THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("Michigan Class" or "Michigan Class Members")**

111.    At all times hereinafter mentioned, QuestX has been an "employer" within the meaning of the Michigan Acts. *See* MICH. COMP. LAWS ANN. § 408.412(d); 408.471(d).

112.    At all times hereinafter mentioned, Plaintiff Mills and the Michigan Class Members have been "employees" within the meaning of the Michigan Acts. *See* MICH. COMP. LAWS ANN. § 408.412(c); 408.471(c).

113.    Plaintiff Mills and the Michigan Class Members were or have been employed by QuestX and have been covered employees entitled to the protections of the Michigan Acts and were not exempt from the protections of the Michigan Acts.

114.    The employer, QuestX, is not exempt from paying overtime benefits under the Michigan Acts.

**B.      FAILURE TO PAY WAGES IN ACCORDANCE WITH THE MICHIGAN ACTS**

115.    All previous paragraphs are incorporated as though fully set forth herein.

116.    The Michigan Acts require that employees, including Plaintiff Mills and the Michigan Class Members, receive wages for all hours worked within at least bi-monthly increments. *See* MICH. COMP. LAWS ANN. § 408.471(f); MICH. COMP. LAWS ANN. § 408.472.

117.    The Michigan Acts also require that employees, including Plaintiff Mills and the Michigan Class Members, receive "time and one-half" overtime premium compensation for hours worked over forty (40) per week. *See* MICH. COMP. LAWS ANN. § 408.414a.

118.    Pursuant to MICH. COMP. LAWS ANN. § 408.417 "An employer who is subject to this act or any regulation or order issued under this act shall furnish each employee with a statement of

the hours worked by the employee and of the wages paid to the employee, listing deductions made each pay period."

119.    Plaintiff Mills and the Michigan Class Members were or have been employed by QuestX and have been covered employees entitled to the protections of Michigan Acts.

120.    QuestX is an employer covered by the requirements set forth in Michigan Acts.

121.    Plaintiff Mills and the Michigan Class Members are not exempt from receiving the overtime benefits under the Michigan Acts.

122.    Plaintiff Mills and the Michigan Class Members worked for QuestX but were not paid for all hours worked within the timeframe required by the Michigan Acts.

123.    Specifically, QuestX did not pay Plaintiff Mills or the Michigan Class Members at all for their hours spent performing work off-the-clock.

124.    Plaintiff Mills and the Michigan Class Members worked more than forty (40) hours in workweeks during times relevant to this case.

125.    However, QuestX violated the Michigan Acts by failing to pay them their appropriate overtime wage for all hours worked in excess of forty (40) hours in a workweek.

126.    Specifically, QuestX failed to pay them for their off-the-clock work.

127.    Further, QuestX, did not pay Plaintiff Mills and the Michigan Class Members all wages due to them, nor did it provide Plaintiff Mills and the Michigan Class Members with a compliant wage statement listing the correct amount of work hours and pay for each pay period.

128.    Plaintiff Mills and the Michigan Class Members have suffered damages and continue to suffer damages as a result of QuestX's acts or omissions as described herein; though QuestX is in possession and control of necessary documents and information from which Michigan Class Members would be able to precisely calculate damages.

129.     In violating the Michigan Acts, QuestX acted willfully, without a good faith basis, and with reckless disregard of applicable Michigan law.

130.     QuestX is liable for the full amount of unpaid wages and unpaid overtime and for costs and reasonable attorneys' fees.

131.     Additionally, QuestX is also liable for an amount equal Plaintiff Mills and the Michigan Class Members unpaid wages as liquidated damages. *See* MICH. COMP. LAWS ANN. § 408. 419(a).

132.     The proposed class of employees, i.e. putative class members sought to be certified pursuant to the Michigan Acts, is defined in Paragraph 110.

133.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of QuestX.

C.     **MICHIGAN ACTS CLASS ALLEGATIONS**

134.     All previous paragraphs are incorporated as though fully set forth herein.

135.     Plaintiff Mills and the Michigan Class Members bring their Michigan Acts claim as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by QuestX to work in Michigan since December 17, 2018.

136.     Class action treatment of Plaintiff Mills and the Michigan Class Members is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

137.     The number of Michigan Class Members is so numerous that joinder of all class members is impracticable.

138.     Plaintiff Mills is a member of the Michigan Class, her claims are typical of the claims of the other Michigan Class Members, and she has no interests that are antagonistic to or in conflict with the interests of the other Michigan Class Members.

139.    Plaintiff Mills and her counsel will fairly and adequately represent the Michigan Class Members and their interests.

140.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

141.    Accordingly, the Michigan Class should be certified as defined in Paragraph 110.

**COUNT THREE**
**(Class Action Alleging Violations of the Nevada Wage Act)**

**A.    NEVADA WAGE ACT COVERAGE**

142.    Plaintiffs incorporate by reference all paragraphs and allegations set forth in the statement of facts of this complaint as though fully and completely set forth herein.

143.    The Nevada Class is defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY QUESTX, LLC, ANYWHERE IN THE STATE OF NEVADA, AT ANY TIME FROM DECEMBER 17, 2019 THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("Nevada Class" or "Nevada Class Members")**

144.    At all times hereinafter mentioned, QuestX was and has been an "employer" within the meaning of the Nevada Law. NEV. REV. STAT. §608.011.

145.    At all times hereinafter mentioned, Plaintiff Schryer and the Nevada Class Members were "employees" of QuestX within the meaning of the NWA. NEV. REV. STAT. §608.010.

146.    Plaintiff Schryer and the Nevada Class Members were or have been employed by QuestX at any time since December 17, 2019 and have been covered employees entitled to the protections of the NWA and were not exempt from the protections of the NWA.

147.    The employer, QuestX, is not exempt from the requirements under the NWA.

## B.  FAILURE TO PAY WAGES IN ACCORDANCE WITH THE NWA

148.    All previous paragraphs are incorporated as though fully set forth herein.

149.    The NWA requires employers, like QuestX, to pay to its employees wages "for each hour the employee works." NEV. REV. STAT. § 608.016.

150.    The NWA mandates that employers must pay employees all wages or compensation due to an employee at least semimonthly. NEV. REV. STAT. § 608.060(1).

151.    QuestX failed to pay Plaintiff Schryer and the Nevada Class Members for all hours worked within each semimonthly pay period, in violation of the NWA.

152.    The NWA further requires employers to pay all wages due to an employee when the employee is discharged or when the employee quits. NEV. REV. STAT. § 608.020–30.

153.    QuestX failed to pay Plaintiff Schryer and the Nevada Class Members all wages due to them when their employment ended.

154.    An employer who fails to pay an employee all wages due within three days, should the employee be discharged, or immediately should the employee quit, is liable to the employee for a penalty fee as specified in the NWA. NEV. REV. STAT. § 608.040(1).

155.    Further, the NWA requires employers, like QuestX, to provide full time employees with no less than a thirty (30) minute uninterrupted meal break during their workday. NEV. REV. STAT. § 608.019.

156.    QuestX failed to provide Plaintiff Schryer and the Nevada Class Members with a meal break that lasted no less than thirty (30) minutes each day, in violation of the NWA.

157.    Accordingly, Plaintiff Schryer and the Nevada Class Members are entitled to recover all unpaid wages, penalty fees, and other damages owed to them under the NWA.

158.     As a result of QuestX's illegal and company-wide policies applicable to Plaintiff Schryer and the Nevada Class Members situated have suffered substantial losses and have been deprived of compensation to which they are entitled, including monetary damages.

159.     Accordingly, the Nevada Class should be certified as defined in Paragraph 143.

## C.     NEVADA CLASS ACTION ALLEGATIONS

160.     Plaintiff Schryer brings her NWA claims pursuant to Nevada law as a class action pursuant to Rule 23 on behalf of all similarly situated individuals employed by QuestX to work in Nevada at any time since December 17, 2019.

161.     Class action treatment of Plaintiff Schryer and the Nevada Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

162.     The number of Nevada Class Members is so numerous that joinder of all class members is impracticable.

163.     Plaintiff Schryer is a member of the Nevada Class, her claims are typical of the claims of other Nevada Class Members, and she has no interests that are antagonistic to or in conflict with the interests of other Nevada Class Members.

164.     Plaintiff Schryer and her counsel will fairly and adequately represent the Nevada Class Members and their interests.

165.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

166.     Accordingly, the Nevada Class should be certified as defined in Paragraph 143.

## VI.
## RELIEF SOUGHT

167.    Plaintiffs respectfully pray for judgment against QuestX as follows:

a.    For an Order certifying the FLSA Collective as defined in Paragraph 81 and requiring QuestX to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members;

b.    For an Order approving the form and content of a notice to be sent to all putative FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

c.    For an Order pursuant to Section 16(b) of the FLSA finding QuestX liable for unpaid back wages due to Plaintiffs (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs (and those FLSA Collective Members who have joined in the suit);

d.    For an Order certifying the Michigan Class as defined in Paragraph 110 and designating Plaintiff Mills as the Class Representative of the Michigan Class;

e.    For an Order certifying the Nevada Class as defined in Paragraph 143 and designating Plaintiff Schryer as the Class Representative of the Nevada Class;

f.    For an Order pursuant to Michigan law awarding Plaintiff Mills and the Michigan Class Members unpaid wages and other damages allowed by law;

g.    For an Order pursuant to Nevada law awarding Plaintiff Schryer and the Nevada Class Members unpaid wages and other damages allowed by law;

h.    For an Order awarding the costs and expenses of this action;

i.    For an Order awarding attorneys' fees;

j.    For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

       k.      For an Order awarding Plaintiffs service awards as permitted by law;

       l.      For an Order compelling the accounting of the books and records of Defendant, at Defendant's expense; and

       m.      For an Order granting such other and further relief as may be necessary and appropriate.

Date:   December 17, 2021             Respectfully submitted,

                           By:      */s/ Jennifer McManus*

**Jennifer McManus**
Michigan Bar No. P65976
jmcmanus@faganlawpc.com
**FAGAN MCMANUS, P.C.**
25892 Woodward Avenue
Royal Oak, Michigan
Telephone: (248) 658-8951
Facsimile: (248) 542-6301

**Clif Alexander** (*Pro Hac Vice Application Forthcoming*)
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson** (*Pro Hac Vice Application Forthcoming*)
Texas Bar No. 24045189
austin@a2xlaw.com
**ANDERSON ALEXANDER, PLLC**
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

***Attorneys in Charge for Plaintiffs and Putative Class Members***

## PLAINTIFFS' DEMAND FOR JURY TRIAL

NOW COME the above-named Plaintiff**s**, by and through **their** attorneys, and hereby demand trial by jury on the above matter.

Date:   December 17, 2021             Respectfully submitted,

                           By:      */s/ Jennifer McManus*

**Jennifer McManus**

Michigan Bar No. P65976
jmcmanus@faganlawpc.com
**FAGAN MCMANUS, P.C.**
25892 Woodward Avenue
Royal Oak, Michigan
Telephone: (248) 658-8951
Facsimile: (248) 542-6301

**Clif Alexander** (*Pro Hac Vice Application Forthcoming*)
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson** (*Pro Hac Vice Application Forthcoming*)
Texas Bar No. 24045189
austin@a2xlaw.com
**ANDERSON ALEXANDER, PLLC**
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

***Attorneys in Charge for Plaintiffs and Putative Class Members***